# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# NORTHERN DIVISION

**ELLIS BROWN**                                                                                              **PETITIONER**

**v.**                                                        **CIVIL ACTION NO.: 3:24-cv-504-TSL-MTP**

**WARDEN B. WINGFIELD, FBOP,**
**YAZOO CITY, FCI**                                                                                      **RESPONDENT**

## REPORT AND RECOMMENDATION

THIS MATTER is before the Court on Ellis Brown's *pro se* Amended Petition [9] for Writ of Habeas Corpus filed under 28 U.S.C. § 2241.[1] Having considered the petition, the record, and the applicable law, the undersigned recommends that the Petition [9] be DENIED and that this matter be DISMISSED without prejudice. The undersigned further recommends that Petitioner's "Emergency Motion for Injunction / Restraining Order" [18] be DENIED.

## BACKGROUND

Petitioner is serving 72 months of incarceration for violating 18 U.S.C. § 242 and is currently housed at the Federal Correctional Complex in Yazoo City, Mississippi. Throughout his Petition, he alleges the Federal Bureau of Prisons ("BOP") has failed to award Federal Time Credits ("FTCs") that he purportedly earned under the First Step Act[2] while in COVID-19 quarantine. Petitioner also alleges that he is being held in custody beyond his release date

---

[1] Petitioner filed his original Petition [1] on August 26, 2024. But, on September 12, 2024, he moved to amend and to add an exhibit to his supporting memorandum brief. *See* [4] [5]. Petitioner filed his Amended Petition [9] with an amended memorandum brief that contains the exhibit he sought to include on January 13, 2025, before the Court ruled on the Motions [4] [5].

[2] *See* 18 U.S.C. § 3632. The First Step Act provides eligible inmates with opportunities to participate in and complete recidivism reduction programs or productive activities which offer the inmates potential reductions in their sentences.

1

because the BOP has not properly calculated his FTCs earned under the First Step Act along with the time afforded to him by the Second Chance Act. He requests that the Court place him "on home confinement or in a Residential Re-entry Center … to release [him] from prison[.]" [9] at 7. At the time this action originated, Petitioner was scheduled to be transferred to pre-release custody on August 6, 2025,[3] and released from custody on February 14, 2026.

Respondent responded in opposition and argued, *inter alia*, that the Amended Petition [9] should be dismissed because Petitioner failed to exhaust his administrative remedies prior to filing this action. *See* [17]. Petitioner filed no reply, and this matter is now ripe for review.

## ANALYSIS

*I. The Petition*

Before seeking habeas relief under 28 U.S.C. § 2241, a federal inmate must exhaust the administrative remedies made available by the Federal BOP. *See Williams v. Willis,* 765 F. App'x 83 (5th Cir. 2019); *Fuller v. Rich*, 11 F.3d 61, 62 (5th Cir. 1994). "[P]roper exhaustion of administrative remedies is necessary," and the exhaustion requirement is not satisfied by "filing an untimely or otherwise procedurally defective grievance or appeal." *Woodford v. Ngo*, 548 U.S. 81, 83-84 (2006); *see also Herrera-Villatoro v. Driver*, 269 F. App'x, 372 (5th Cir. 2008). While there are exceptions to the exhaustion requirement that may be available "where the available administrative remedies either are unavailable or wholly inappropriate to the relief sought, or where the attempt to exhaust such remedies would itself be a patently futile course of action," such exceptions "apply only in extraordinary circumstances." *Fuller*, 11 F.3d at 62 (internal citations and quotations omitted); *see also Broderick v. Chapman*, 364 F. App'x 111,

---

[3] As discussed elsewhere, his pre-release date has since been updated to June 17, 2025. *See* [20] at 1.

2

112 (5th Cir. 2010). A petitioner seeking waiver of the exhaustion requirement bears the burden of demonstrating the futility of administrative review. *See Mayberry v. Pettiford*, 74 F. App'x, 299 (5th Cir. 2003) (citing *Fuller*, 11 F.3d at 62)).

    Respondent, citing 28 C.F.R. § 542.13 *et seq*., points out that the BOP has a multi-step administrative process for resolving prisoner complaints. *See* [17] at 3. Initially, an inmate must attempt to informally resolve the complaint with prison staff. Thereafter, the prisoner must submit a request for administrative remedies to the warden. If the prisoner is dissatisfied with the warden's response, the prisoner may then appeal to the Regional Director. If the prisoner remains dissatisfied, he may proceed to the final step in the grievance process, an appeal to the BOP's Office of General Counsel. *See* 28 C.F.R. §§ 542.13-542.15.

    Respondent argues that although Petitioner filed several administrative claims related to his First Step Act credits and Residential Reentry Center ("RRC") placement, none were appropriately exhausted. Respondent says that Petitioner refused to follow the proper process by "skipping the institutional level and proceeding directly to the Regional Director or Office of General Counsel." [17] at 4. In support, Respondent submitted a declaration of Amy Landers, a Paralegal at the Federal Correctional Complex in Yazoo City. *See* [17-1]. According to Landers, Petitioner has filed several administrative remedies concerning the issues in the Petition but that "none of these remedies can be seen to appropriately satisfy the exhaustion requirement as they were all rejected at each level of administrative review." *Id*. at 2.

    Respondent provided Petitioner's SENTRY[4] records documenting his use of the BOP's administrative remedies program while incarcerated in support of this position. Of the

---

[4] SENTRY refers to the BOP's record-keeping system regarding the administrative remedy process. *See* [17-1] at 2.

3

administrative remedies filed, the following appear to relate to Petitioner's First Step Act credits: Remedy ID Nos. 1204037-R1, 1204037-R2, 1204037-A1, 1204037-A2, 1204037-A3, 1204037-A4, 1225805-R1, 1226445-R1, 1226451-R1, 1219882-R1, 1219882-A1, and 1231020-R1. *Id*. at 3. Each remedy was rejected, often with directions informing Petitioner that he failed to first file the remedy at the appropriate level. *See id.* at 9, 10, and 14.[5] If an administrative remedy is rejected the inmate is prohibited from proceeding to the next stage of the administrative review process without correcting the defect causing the rejection in the administrative remedy filed at that level. *Id*. at 2.

Here, Petitioner apparently never corrected the deficiencies warranting the rejections. He instead continued to file his remedies with the Regional Director, skipping the initial steps in the administrative process. As previously explained, prisoners are required to exhaust administrative remedies in a procedurally correct manner. And "[p]roper exhaustion" demands compliance with the agency's deadlines and other critical procedural rules. *Woodford*, 548 U.S. at 90-91. This Petitioner failed to do. But he says that he should be excused from the exhaustion requirement, arguing that any effort to exhaust was futile and that the administrative remedy process was unavailable to him.

Having claimed futility, Petitioner bears the burden of demonstrating such extraordinary circumstances as would warrant waiver of the exhaustion requirement. *Mayberry*, 74 F. App'x at 299. In support, Petitioner lists several remedies that he allegedly submitted but argues that the prison staff "prevent[ed] him from any chance of success in resolving these issues with the administrative remedy process." [10] at 11. For example, he claims that he was originally

---

[5] The same is also generally true for administrative remedies filed by Petitioner which were not relevant to issues raised in the Petition. *See, e.g.*, [17-1] at 13, 15.

denied the opportunity to speak with various prison officials about the issues raised in the Petition during "open house." *Id*. Then he sent electronic requests about when he may be able to meet with prison staff during subsequent "open house" events, but he alleges that no one ever replied. *Id*. at 12. Petitioner also says that he later asked a prison official if he could file a BP-8 or BP-9 to address issues with his time credits. The prison official allegedly informed him that any such effort "would be 'futile' and to 'get a lawyer.'" *Id*. According to Petitioner, his unit manager told him the same thing.[6] Even so, Petitioner filed several administrative remedies, many of which he claims were ignored or incorrectly processed.

The exhibits attached by the parties, however, do not support Petitioner's position. Indeed, a review of the information provided before the Court indicates that Petitioner failed to utilize all four levels of the administrative remedies process in the manner prescribed.[7] Respondent provided Petitioner's SENTRY records which revealed the reasons for the rejections: failing to file the remedies at the appropriate level. Accordingly, Petitioner has not met his burden showing that the exhaustion requirement should be waived due to futility. Nor should the requirement be waived due to Petitioner's allegation that the administrative remedies were unavailable to him, especially considering the fact that his SENTRY records detail seventeen different remedies that Petitioner filed.[8]

---

[6] None of these averments are separately sworn nor stated under penalty of perjury.

[7] Petitioner also failed to utilize all levels of exhaustion before filing an earlier petition under § 2241. Consequently, the earlier petition was dismissed for failure to exhaust. *See Brown v. Harrison*, 2024 WL 4135495 (S.D. Miss. July 26, 2024), *report and recommendation adopted*, 2024 WL 3888907 (S.D. Miss. Aug. 21, 2024).

[8] *See* [17-1] at 9-17.

5

As Petitioner has failed to properly exhaust his administrative remedies, his Petition should be denied.[9]

## II. The Emergency Motion

On April 18, 2025, after briefing concluded on the Amended Petition [9], Petitioner filed an "Emergency Motion for Injunction / Restraining Order" [18]. In the Motion [18], he argues that the BOP issued a memorandum on April 1, 2025, concerning budgetary constraints and its impact on the management of Residential Reentry Center ("RRC") populations. *See* [18-1]. According to Petitioner, the memorandum provided that "all inmates releasing to the community under Second Chance Act (SCA) authority after April 21, 2025, will have dates adjusted in order to bring the Residential Reentry Management Branch cost centers into alignment with the Federal Bureau of Prisons['] (Bureau) appropriated funding levels until further notice." *Id*. at 1. As such, Petitioner alleged that he would lose his August 6, 2025, placement date if he is not placed in an RRC on or by April 21, 2025.

On April 21, 2025, Respondent filed a Response [20] to the Emergency Motion [18], stating that the BOP memorandum has since been rescinded and that it has no effect on Petitioner nor his transfer date to pre-release custody. In fact, Petitioner's placement date has now been updated to June 17, 2025, as opposed to August 6, 2025. *See* [20] at 1. Therefore, the undersigned recommends that the "Emergency Motion for Injunction / Restraining Order" [18] be denied as moot.

Even if the Emergency Motion [18] is not moot, Petitioner has failed to prove the elements necessary to obtain injunctive relief. A party requesting a temporary restraining order

---

[9] Because Petitioner has not exhausted his administrative remedies, the Court need not address Respondent's alternative arguments for dismissal.

or preliminary injunction must demonstrate each of the following: 1) a substantial likelihood of success on the merits; 2) a substantial threat that failure to grant the injunction will result in irreparable injury; 3) the threatened injury must outweigh any damage that the injunction will cause to the adverse party; and 4) the injunction must not have an adverse effect on the public interest. *Women's Med. Ctr. of Northwest Houston v. Bell,* 248 F.3d 411, 419 n. 15 (5th Cir. 2001). "An injunction is an extraordinary remedy and should not issue except upon a clear showing of possible irreparable injury." *Lewis v. S.S. Baune,* 534 F.2d 1115, 1121 (5th Cir. 1976).

Here, as the undersigned concludes that the Petition should be dismissed and because the BOP memorandum at issue has been rescinded, Petitioner has failed to demonstrate a likelihood of success on the merits. Accordingly, the Motion [18] should be denied.

## RECOMMENDATION

For the reasons set forth above, the undersigned recommends that the Amended Petition [9] for Writ of Habeas Corpus be DENIED and that this action be DISMISSED without prejudice. The undersigned further recommends that Petitioner's "Emergency Motion for Injunction / Restraining Order" [18] be DENIED.

## NOTICE OF RIGHT TO OBJECT

In accordance with the rules and 28 U.S.C. § 636(b)(1), any party, within fourteen days after being served a copy of this recommendation, may serve and file written objections to the recommendations, with a copy to the District Judge, the U.S. Magistrate Judge, and the opposing party. L.U. Civ. R. 72(a)(3). The District Judge at that time may accept, reject, or modify in whole or in part, the recommendation of the Magistrate Judge, or may receive further evidence or recommit the matter to this Court with instructions. Failure to timely file written objections to

proposed findings, conclusions, and recommendations contained in this report will bar an aggrieved party, except on the grounds of plain error, from attacking on appeal unobjected to proposed factual findings and legal conclusions accepted by the District Court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

    This the 3rd day of June, 2025.

s/Michael T. Parker  
United States Magistrate Judge
